JESSICA K. PRIDE (SBN 249212)
jpride@pridelawfirm.com
SOPHIA REBECCA-MARIE (SBN 345972)
sophia@pridelawfirm.com
THE PRIDE LAW FIRM
2831 Camino Del Rio S., Suite 104
San Diego, CA 92108
Telephone: (619) 516-8166
Facsimile: (619) 785-3414
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| I.R., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA (FEDERAL BUREAU OF PRISONS); JORGE AVALOS, an individual; CEDRIC KINLAW, an individual; RAY J. GARCIA, an individual; and DOES 1-25, inclusive, <br><br> Defendants. | CASE NO.   4:25-cv-8049 <br><br> **COMPLAINT FOR:** <br> 1. **Sexual Abuse;** <br> 2. **Gender Violence;** <br> 3. **Sexual Battery;** <br> 4. **Intentional Infliction of Emotional Distress;** <br> 5. **Negligent Infliction of Emotional Distress;** <br> 6. **Battery;** <br> 7. **Failure to Protect; and** <br> 8. **Negligence** <br><br> **DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     Beginning in approximately 2019, Defendants Jorge Avalos ("AVALOS") and Cedric Kinlaw ("KINLAW"), correctional officers at Federal Correctional Institution – Dublin ("FCI Dublin") owned and operated by Defendant the United States of America (Federal Bureau of Prisons) ("United States") sexually assaulted and sexually harassed Plaintiff I.R. ("Plaintiff"), a minimum-security inmate, in violation of federal and state law.

2.    Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to federal inmates. Under PREA, the U.S. Department of Justice ("DOJ") promulgated detailed regulations that provide precise procedures that prisons must follow. The Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3.    Defendants AVALOS and KINLAW, agents and employees of FCI Dublin, repeatedly subjected Plaintiff to sexual abuse and harassment. In doing so, Defendants violated Plaintiff's rights under the U.S. Constitution and California law. Defendants further committed multiple common law torts against Plaintiff, as recognized under California law.

4.    Defendant RAY J. GARCIA ("GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020 and the warden of FCI Dublin from November 2020 to July 2021 – the entire period that Plaintiff was incarcerated at FCI Dublin. As the warden, Garcia was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. Garcia was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

5.    GARCIA was also arrested and charged with sexual abuse of a ward based on his sexual abuse of multiple female inmates at FCI Dublin. He was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

6.    GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of inmates, and he was clearly tolerating abuse by many more of his underlings, including AVALOS and KINLAW.

THE PRIDE
LAW FIRM

- 2 -
PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

7.    GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused. Despite this knowledge, GARCIA did not do anything to stop it, even though he had a duty to do so. Due to the fact that GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

8.    GARCIA had actual knowledge that inmates complained about the assaults. GARCIA knew or should have known that the inmates were subjected to retaliation. Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused. Had GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused. GARCIA's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

9.    PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to GARCIA. During GARCIA'S tenure, complaints of sexual assaults of inmates by correctional officers and/or staff were reported.

10.    With knowledge of prior abuse against inmates by FCI Dublin, representatives, and employees, GARCIA failed to protect the inmates and turned a blind eye. Such behavior set the tone for rape culture at FCI Dublin, garnering GARCIA and his subordinate correctional officers and employees the nickname "the Rape Club."

11.    Further, UNITED STATES, GARCIA, and others inadequately supervised and trained the prison's correctional officers and other employees which was a substantial factor in causing Plaintiff's abuse.

12.    As a result of all Defendants' actions, Plaintiff suffered numerous emotional injuries and incurred severe personal injuries, which continue to affect her today.

13. Plaintiff brings this civil action and asserts claims: (1) against AVALOSA, KINLAW, GARCIA, and DOES 1-25, inclusive, under the Eighth Amendment's Cruel and Unusual Punishment Clause; (2) against AVALOS and KINLAW pursuant to various California common law torts and statutes; and (3) against the United States under the Federal Tort Claims Act (28 U.S.C. §§ 1346(b), 1671-2680) ("FTCA") for various tort claims committed by Defendants arising under California common law committed within the course and scope of their federal office or employment.

14. For these violations, Plaintiff seeks nominal, compensatory, and punitive damages, attorneys' fees and costs, and any other relief that the Court deems appropriate.

## JURISDICTION AND VENUE

15. Plaintiff's claims arise under the United States Constitution, California statutory law, California common law, and the FTCA. The Court has diversity jurisdiction over Plaintiff's entire action under 28 U.S.C. § 1332 because Plaintiff and Defendants are diverse in citizenship and more than $75,000 is in controversy. The Court also has federal question jurisdiction over Plaintiff's Constitutional claims and FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. And the Court has supplemental jurisdiction over Plaintiff's California statutory and common-law claims under 28 U.S.C. § 1367 because these state-law claims arise from a common nucleus of operative fact with Plaintiff's federal question claims. The *Bivens* claims provide federal question jurisdiction as well.

16. The Court also has personal jurisdiction over Defendants. The Court has general jurisdiction over Defendants because, on information and belief, each Defendant is a citizen of, and domiciled in, California. The Court has specific jurisdiction over Defendants because they committed the actions and omissions forming the basis for each claim against them in California.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and

28 U.S.C. § 1402(b). As noted above, Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin, located at 5701 8th St., Dublin, California 94568.

## INTRADISTRICT ASSIGNMENT

18. Pursuant to Civil Local Rule 3-29(d), Plaintiff's action is properly assigned to the San Francisco Division of this District because the action arises from actions and omissions taken in Alameda County, California, where FCI Dublin is located.

## PARTIES

19. Plaintiff is an individual and citizen of Sacramento, California. During the relevant period, Plaintiff was incarcerated at FCI Dublin in Dublin, California. Plaintiff is currently in federal custody and housed at FCI Tallahassee.

20. Upon information and belief, Defendant AVALOS is an individual and citizen of California, where he is domiciled. During the relevant period, AVALOS worked as a correctional officer ("CO") at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, AVALOS was acting within the scope of his official employment, or with the BOP's permission and consent.

21. Upon information and belief, Defendant KINLAW is an individual and citizen of California, where he is domiciled. During the relevant period, KINLAW worked as a CO at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, KINLAW was acting within the scope of his official employment, or with the BOP's permission and consent.

22. Upon information and belief, Defendant GARCIA is an individual and citizen of California. During the relevant period, GARCIA worked as the warden at FCI Dublin in the BOP's employment. While performing the acts and omissions that Plaintiff alleges in this complaint, GARCIA was acting within the scope of his

- 5 -

official employment, or with the BOP's permission and consent. GARCIA is currently serving his sentence in BOP custody, and is housed in the State of Iowa.

23. Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, was in possession and control of FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims against Defendants, pursuant to FTCA, 28 U.S.C. § 2674.

24. Plaintiff is ignorant as to the true names, identities, and capacities of Defendants DOES 1 through 25, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 25. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their liability.

25. Defendants Does 1-25, individually and in their official capacities, at all times relevant herein, were correctional officers and/or employees for the BOP, acting in their official capacity. These defendants include correctional officers in supervisory positions that participated in training and other employees, and in reporting incidents of sexual abuse to the BOP.

## STATEMENT OF FACTS

**A. PREA regulations provide mandatory procedures for preventing, reporting, investigating, and responding to reports of staff sexual abuse of an inmate**

26. PREA regulations require the BOP to have a strict "written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the [BOP's] approach to preventing, detecting, and responding to such conduct," which the BOP has adopted.[1]

27. PREA regulations also comprehensively mandate that the BOP and its correctional staff follow certain policies and procedures when an inmate has allegedly suffered sexual abuse.

---

[1] *See* BOP Program Statement No. 5324.11, at 15 (Jan. 6, 2014); 28 C.F.R. § 115.11(b), (c).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

28. First and foremost, the BOP "shall require all staff to report immediately" "any knowledge, suspicion, or information regarding an incident of sexual abuse" and "staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." [2] "Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions." [3]

29. Regardless of whether a report of sexual abuse is made, if an inmate is "subject to a substantial risk of imminent sexual abuse, [BOP employees] shall take immediate action to protect the inmate." [4]

30. Upon receiving a report of inmate sexual abuse, the facility is required to report it to a designated internal investigator [5] and conduct an administrative or criminal investigation. [6] A criminal investigation is required for all allegations of inmate sexual abuse, "unless the allegation does not involve potentially criminal behavior." [7] All such referrals must be documented. [8]

31. Given the high risk for retaliation against a reporter or victim, the BOP is required to "protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff and shall designate which staff members or departments are charged with monitoring retaliation." [9] A prison's PREA compliance manager must monitor an inmate sexual abuse victim for 90 days after a report of abuse is filed to ensure that he or she is not retaliated against by prison staff. [10]

32. The BOP must also provide ongoing access to mental healthcare to all

---

[2] 28 C.F.R. § 115.61(a).
[3] *Id.* § 115.61(b)
[4] *Id.* § 115.62
[5] *Id.* § 115.61(e)
[6] *Id.* § 115.22(a); *see also Id.* § 115.71
[7] *Id.* § 115.22(b)
[8] *Id.*
[9] *Id.* § 115.67(a).
[10] 28 C.F.R. § 115.67(c); BOP Program Statement No. 5324.11, at 44 (Jan. 6, 2014)

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

inmates who have been victimized by sexual abuse while detained in the facility.[11]

33.     The BOP is required to train every employee who may have contact with inmates to comply with the above PREA regulations and must "document, through employee signature or electronic verification, that employees understand the training they have received."[12] In addition to this general training, specialized training is required for sexual abuse investigators.[13]

34.     Where an investigation finds that a staff member has engaged in sexual abuse, the presumptive disciplinary sanction is termination, and some form of discipline is required.[14]

35.     Finally, all documentation relating to an allegation of inmate sexual abuse must be maintained[15] and securely retained for at least ten years after the date of initial collection.[16]

36.     Defendants repeatedly violated these PREA regulations.

**B.     Defendant KINLAW routinely subjected Plaintiff to sexual abuse and harassment**

37.     Plaintiff arrived at FCI Dublin in approximately 2019. A few months after her arrival, she was assigned to work in the food services department.

38.     CO KINLAW also worked in food services. From their first interaction, KINLAW began making repeated, uninvited sexual comments directed at Plaintiff. He took a particular interest in Plaintiff's personal life and family and made frequent inappropriate remarks.

39.     In 2020, when COVID-19 lockdowns went into effect, inmates were placed into quarantine. Shortly thereafter, KINLAW instructed Plaintiff and another female inmate to report to him in the cafeteria.

40.     Once Plaintiff arrived, KINLAW led her into the kitchen, where he

[11] *Id.* § 115.83(a), (b), (h).
[12] *Id.* § 115.31.
[13] *Id.* § 115.34.
[14] *Id.* § 115.76.
[15] *Id.* § 115.87(a), (d).
[16] *Id.* § 115.89(a), (d).

THE PRIDE
LAW FIRM

- 8 -

initiated sexual contact, forcibly kissing Plaintiff and fondling her body, including her breasts, over her clothing.

41.    After this first assault, KINLAW continued his abuse during Plaintiff's food service shifts, fondling her over her clothing at least fifty more times and forcibly kissing her at least twenty times. Whenever KINLAW saw Plaintiff in the kitchen, he would force sexual contact on her.

42.    KINLAW continued his pursuit of Plaintiff. He pursued Plaintiff through "love" letters and gifts, including expensive perfume. His pursuit was unrelenting, and Plaintiff had no way to escape his control within the confines of FCI Dublin.

43.    KINLAW explicitly told Plaintiff to remain silent about his conduct. He told her that she could not report the abuse. Because of this, Plaintiff feared speaking out because the COs warned her that they knew her exact location at all time within the prison and that she could not escape their control. The COs exercised complete authority and dominion over Plaintiff's daily life, leaving her terrified to resist.

44.    Plaintiff also struggled with the deep pain of being separated from her children. KINLAW routinely exploited this vulnerability, using Plaintiff's maternal concerns as leverage to coerce compliance with his sexual abuse. KINLAW sent Plaintiff money that she could use to help support her children while under BOP custody, making Plaintiff feel obligated to endure his sexual abuse in order to provide for them and preserve opportunities to see them.

45.    In or around July 2021, Plaintiff was released from FCI Dublin and transferred to a halfway house. Although she was no longer within prison walls, while housed at the halfway house, Plaintiff remained under the custody and control of the BOP.

46.    When Plaintiff was transported to the halfway house, KINLAW accompanied her on the flight. On the very day she arrived, KINLAW took her to a nearby hotel, where he raped her through forcible sexual intercourse.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

47. During Plaintiff's assignment to the halfway house, KINLAW repeatedly visited her. He arranged for hotel rooms nearby where he continued to sexually abuse her. He further exploited Plaintiff's restricted liberty by orchestrating trips to locations such as the Grand Canyon and Six Flag, including her daughters on these trips. KINLAW controlled all the arrangements and sent Plaintiff the details by email, leaving her no meaningful ability to refuse.

48. On at least one occasion, Plaintiff attempted to cancel a trip that KINLAW had planned. He refused to accept her refusal, reinforcing his control and Plaintiff's lack of agency under his authority.

49. KINLAW continued to manipulate Plaintiff with money and expensive gifts, including designer shoes and a car purchased in his name with Plaintiff listed as a co-purchaser. He remained in constant contact, using both his BOP-issued and personal cell phones to pressure Plaintiff through text messages such as, "I can't let you go its beyond dating you're my everything" and "I'm begging you to answer why ignore me. I need you."

50. KINLAW'S last communication with Plaintiff was in approximately October 2023.

51. Even after Plaintiff's transfer from FCI Dublin, KINLAW abused his position as a BOP officer to assert authority over her. His persistent presence, control over travel and finances, and manipulation involving Plaintiff's children reinforced that she remained subject to BOP's authority. Plaintiff reasonably feared for her safety, her freedom, and her family's well-being if she resisted or reported him.

52. As a direct result of this prolonged abuse, intimidation, and coercion Plaintiff was prevented from safely reporting KINLAW's conduct or asserting her legal rights during her incarceration and while housed in the halfway house.

**C.   Defendant AVALOS routinely subjected Plaintiff to sexual abuse**

53. During Plaintiff's time at Dublin, she met CO AVALOS in the

medical department.

54. AVALOS frequently called Plaintiff over the intercom. On one occasion, AVALOS called Plaintiff over the intercom and instructed her to present to the medical wing for care.

55. AVALOS told Plaintiff he needed to repeat a pap smear; however, he never performed a pap smear.

56. Instead, AVALOS used this as an excuse to exploit Plaintiff's medical care as an avenue to sexually abuse her.

57. During the purported "pap smear", AVALOS inserted his fingers into Plaintiff's vagina and digitally penetrated her. AVALOS did this for not medical purpose.

58. As AVALOS sexually assaulted Plaintiff, she yelled "stop" and told AVALOS that it bothered her. He replied, "I thought you were enjoying it." AVALOS also told Plaintiff he was permitted to perform the "pap smear" without a female chaperone present despite Plaintiff's cries for him to stop.

**D.     FCI Dublin is known for its culture of tolerating sexual misconduct**

59. Based on information and belief, throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin. Currently, six employees have been indicted by the Department of Justice for sexual misconduct, five have pled guilty or been convicted, and nine other employees are on administrative leave pending investigation – the most in U.S. history of the Bureau of Prisons. Twenty-five total were under investigation as of May 2022.[17] The following examples are just a fraction of the magnitude of sexual misconduct and violence that transpired at FCI Dublin:

---

[17] See Lisa Fernandez, 25 Dublin prison employees under investigation for sex, drug, lying abuses, KTVU (May 5, 2022), https://www.ktvu.com/news/25-dublin-prison-employees-under-investigation-for-sex-drug-lying-abuses.

THE PRIDE
LAW FIRM

- 11 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

- In 1996, BOP officers took three female inmates from FCI Dublin to a male unit, opened their cell doors, and allowed male inmates to rape them.

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to the U.S. Senate Report, [18] in the early 2010's, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, an FCI inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She also sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, inmate L.I. filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with L.I. in May of 2018, and although he was ultimately charged with abuse of L.I., prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- Between approximately June of 2020 and September of 2020, inmate A.R. witnessed Klinger's sexual relationship with another inmate. She witnessed Klinger take women into a hidden areas to have sex with him.

---

[18] Jon Ossoff & Ron Johnson, S. Rep., Sexual Abuse of Female Inmates in Federal Prisons (2022) (released in conjunction with the permanent subcomm. on investigations December 13, 2022 hearing).

The Pride Law Firm

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Klinger and CO Jaime Perez spoke with sexually explicit language toward A.R. CO Perez would bump up against her and grab her breasts. Officer Perez also took photos of A.R.

- Between approximately August 2020 and November 2020, inmate D.V. was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer Enrique Chavez. CO Chavez kissed her, touched her bare breasts and vagina, and had D.V. touch his penis. CO Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, CO Chavez sexually harassed another inmate, J.C., while was working in the kitchen. CO Chavez would brush his erect penis up against J.C. and said "look, it's hard for you." CO Chavez was charged with abusive sexual contact of a prisoner in violation of 18 U.S.C. § 2244(a)(4). He pled guilty to the conduct and was sentenced to 20 months in prison.

- Another inmate, A.J., suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When A.J. arrived, Paramedic Fraser Cohen grabbed her breasts with no chaperone. Later throughout her incarceration, CO Nicholas Ramos consistently watched her in the shower, and both CO Ramos and CO Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, Klinger manipulated inmate M.R. into performing oral sex and engaging in forced sexual intercourse.

- Saucedo watched inmate A.J. in the shower on multiple occasions. Saucedo ripped open the shower curtain while inmate L.C. was showering, causing her to fall over so he could see her naked body. Saucedo also sexually harassed L.C. by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation. Additionally, inmate L.A. was sexually harassed by Saucedo when he

forced her to bend over in front of him.

- Inmate D.S. was forced to engage in oral sex with nurse Jeff Wilson. Jeff Wilson also forced inmate L.A. to show him her breasts.

- Another inmate went to TDY (temporary duty) medical employee Jay Alexander (exact name unknown) for medical treatment on her back, and he pulled her underwear down and touched her buttocks and in between her inner thighs.

- Inmate G.M. was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with G.M., touch her breasts, caress her, and make her believe he was her boyfriend. When G.M. was on probation, David Perez met up with her and had her touch his genitals.

- Another kitchen foreman, O'Connor (full name unknown) touched inmate N.P.'s buttocks and brushed his hand over her chest.

- CO Jones would tell inmate J.C. to "suck his dick" and he would tell her to "Get on your knees." CO Jones would grab his genitalia and tell her to "look."

60.   Upon information and belief, at least 25 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have been reassigned to other prisons. This reassignment got the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."[19]

61.   In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

---

[19] KTVU Fox 2 Reporter Lisa Fernandez: https://www.ktvu.com/news/dublin-prison-guard-says-she-was-forced-out-for-reporting-abuse

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security-level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category. Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022.

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
| --- | --- | --- | --- |
| BOP | 315 | 0 (0%) | 237 |
| Residential | 25 | 0 (0%) | 12 |

62. Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

63. Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R. 115.401(a).

64. A PREA Audit Report for FCI Dublin was completed and signed on June 14, 2017.

65. That report found that FCI Dublin met or exceeded PREA standard.

66. The next final PREA audit report was March 12, 2022.

67. The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

68. The audit was completed after Warden Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

69. In December 2022, the United States Senate reported on the Permanent Subcommittee on Investigations findings from its investigation into sexual abuse of

female prisoners in custody of the BOP. The report found that in at least four BOP facilities (FCI Dublin being one of them), multiple women endured ongoing sexual abuse for months or years. The report's conclusion stated, "BOP failed to detect or prevent sexual abuse of incarcerated women by male BOP employees. The agency's poor implementation of the audit program and reporting mechanisms required by PREA allowed serious, repeated sexual abuse in at least four facilities to go undetected. BOP's internal affairs practices have failed to hold employees accountable, and multiple admitted sexual abusers were not criminally prosecuted as a result. Further, for a decade, BOP failed to respond to this abuse or implement agency-wide reforms. Moving forward, BOP should consider the Subcommittee's findings as it works to implement changes to how it handles sexual abuse of female prisoners by male BOP employees."[20]

70. Warden Garcia was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact and one count of lying to the FBI. Garcia was sentenced to 5 years and 10 months in prison. Former CO Ross Klinger pled guilty to federal criminal charges for Sexual Abuse of a Ward (18 U.S.C. § 2243(b)) stemming out of his conduct against two other inmates and he is awaiting sentencing scheduled for December 13, 2023. A federal jury convicted CO John Bellhouse of five counts of sexually abusing female inmates. Additionally, in March of 2022, CO Sergio Saucedo and CO Nicholas Ramos were placed on leave as a result of sexual misconduct allegations. CO Ramos committed suicide on August 21, 2022.

71. Defendant United States failed to provide the sexual abuse victims with counseling services or victim advocates. The victims were retaliated against with interviews and examinations after filing their Federal Tort Claims. As a result of reporting the misconduct, the victims were put in the Solitary Housing Unit (SHU),

---

[20] JON OSSOF & RON JOHNSON, S.REP., SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS (2022) (released in conjunction with the Permanent Subcomm. on Investigations December 13, 2022 hearing).

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

received daily room tosses, and were placed on lock downs. The victims also had their phone calls and visitations taken away, their legal mail was read, and their legal phone calls were monitored.

72.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, and employee of the remaining Defendants, and at all times herein mentioned, each was acting within the time, place and scope of employment of other Defendants. At all material times, all of the Defendants aided, abetted, authorized, and ratified all of the actions of all of the other Defendants. Plaintiff is informed and believes, and based thereupon alleges, that at all material times, Defendants, and each of them, were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter ego, and/or joint ventures of the other Defendants, and each of them, and in doing the things alleged herein, were acting within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, and/or joint venture and with the permission and consent of each of the other Defendants. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## **FTCA STATUTE OF LIMITATION AND ADMINISTRATIVE EXHAUSTION**

73.    This action is, at least in part, brought pursuant to the Federal Torts Claim Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680.

74.    The FTCA provides that:

> A tort claim against the United States shall be forever barred unless it is presented in writing to appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final

THE PRIDE
LAW FIRM

- 17 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

denial of the claim by the agency to which it was presented. (28 U.S.C. § 2401(b).)

75.     As described herein, I.R. was subjected to repeated sexual abuse by correctional officers for a period of at least four years.

76.     During her incarceration, I.R. was threatened, intimidated, and retaliated against by correctional officers. She felt like she became a target while at Dublin and even after she left.  The correctional officers had the power to take away good time and control when she got out. When she was released from Dublin, she remained in fear that they would send her to back to prison or find her and hurt her and her family. This fear was further exacerbated by KINLAW'S continued exercise of power and authority over I.R. and his involvement of her children.

77.     These threats created a constant state of fear that rendered it impossible for Plaintiff to timely report her claims or to pursue her legal rights while incarcerated. Even after her release, KINLAW'S control and apparent authority of her custodial status, the severe trauma, psychological distress, and post-traumatic stress disorder resulting from her years of sexual abuse and retaliation continued to prevent her ability to seek relief.

78.     Plaintiff timely presented her FTCA claim to the BOP on October 3, 2024. Plaintiff remained under the custody and control of the BOP on probation under approximately September 2022. Plaintiff further remained under the custody and control of the BOP through the authority of KINLAW who continued to exert his authority over Plaintiff through October 2023.

79.     Alternatively, Plaintiff is entitled to equitable tolling for her FTCA claim received by the BOP on October 3, 2024.

80.     The United States Supreme Court determined the FTCA's statute of limitations is non-jurisdictional and subject to equitable tolling. (*United States v. Wong*, 575 U.S. 402, 420 (2015). Equitable tolling applies when (1) a plaintiff pursued her rights diligently, and (2) extraordinary circumstances prevented timely

filing. (*Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013).)

81.    Courts have recognized that survivors of sexual abuse may be entitled to equitable tolling where trauma, fear, and coercion prevented timely filing. (See e.g., Order granting in Part and Denying in Part Motion to Dismiss at 1, *Su v. United States*, No. 4:25-cv-00329-YGR (N.D. Cal. Sept. 3, 2025), ECF No. 24.; *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (equitable tolling appropriate where sexual abuse and resulting post-traumatic stress disorder rendered plaintiff unable to timely pursue claims.).)

82.    I.R. faced extraordinary circumstances which prevented the timely filing of her FTCA claim. The prolonged sexual abuse, repeated threats, retaliation by corrections officers, and lasting psychological effects of the substantial sexual abuse made it impossible for her to assert her rights within the statutory deadline.

83.    In February 2022, U.S. Representative Jackie Speier went to FCI Dublin to further investigate the potential abuse occurring by BOP and BOP employees. Representative Speier was prevented from speaking with several inmates who had reported abuse and was instead directed to speak only with staff members.[21] This restriction of access to incarcerated survivors of sexual abuse further demonstrated a deliberate effort by FCI Dublin and the BOP to obstruct independent oversight and investigation. This was a continued pattern of cover-up and suppression of reports of abuse at the facility.

84.    A court-appointed Special Master has confirmed that during the time of Plaintiff's incarceration, "there was no safe or consistent path women could take to file sex abuse complaints," that women were "intimidated and forced to justify why they needed to complete [PREA] forms in the first place," and that women who tried to report abuse were met with retaliation, including solitary confinement and

---

[21] Associated Press, *Whistleblowers Say They're Bullied for Exposing Prison Abuse*, COLUMBIAN (February 24, 2022), https://www.columbian.com/news/2022/feb/24/whistleblowers-say-theyre-bullied-for-exposing-prison-abuse/.

THE PRIDE LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

wrongful disciplinary infractions that extended their incarceration.[22]

85. Judge Yvonne Gonzalez Rogers found "shocking constitutional violations" at FCI Dublin, including systemic failures by the BOP that intentionally disregarded inmates' rights for years despite being fully aware of ongoing abuse or retaliation.[23]

86. These wrongful acts and omissions by The United States and Defendants created an environment in which it was impossible for I.R. to assert her rights. The extraordinary circumstances of prolonged sexual abuse, coercion, intimidation, and post-traumatic harm directly prevented I.R. from filing within in the statutory period.

87. I.R. acted diligently under her circumstances. I.R. exhausted these claims against the United States under the FTCA in 2024 once she was safely outside Defendants' control and able to confront the fear and trauma that had silenced her. Specifically, I.R. felt safe enough to assert her rights once she no longer had any communication with KINLAW for at least a year. Further, I.R. felt she achieved safety from the trauma and continuing threat of BOP after she learned numerous other women who were incarcerated at FCI Dublin had come forward in 2024. With the knowledge that other women had safely reported the ongoing sexual abuse and retaliation, I.R. was finally able to overcome her fear and traumatic impacts which impaired her from seeking relief.

88. Plaintiff submitted a "Claim for Damage Injury, or Death" to the BOP for "permanent injuries, mental anguish, embarrassment, humiliation, pain, distress, and damages" as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.

---

[22] Lisa Fernandez, *FCI Dublin Special Master Finds 'Cascade Failures at Women's Prison*, KTVU (Aug. 20, 2024), https://www.ktvu.com/news/fci-dublin-special-master-finds-cascade-failures-womens-prison; Lisa Fernandez, *Special Master Issues 1st Report on FCI Dublin Sex Assault*, KTVU (Aug. 19, 2024), https://www.ktvu.com/news/special-master-issues-1st-report-fci-dublin-sex-assault; Lisa Fernandez, *FCI Dublin Special Master Authorized to Ensure Women Care for at Other Prisons: Judge*, KTVU (May 21, 2024), https://www.ktvu.com/news/fci-dublin-special-master-authorized-to-ensure-women-cared-for-at-other-prisons-judge.
[23] Lisa Fernandez, *'Shocking' Constitutional Violation at Now-Closed FCI Dublin: Judge*, KTVU (May 7, 2024), https://www.ktvu.com/news/judge-cites-shocking-constitutional-violations-now-closed-fci-dublin.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

89. Under the FTCA (28 U.S.C. § 2675(a)), if a federal agency fails to issue a final disposition on a claim within six months, a Plaintiff may consider this a final denial of her claim. The BOP has neither accepted or denied Plaintiff's claim and over six months has passed. Thus, Plaintiff considered this a final denial of her claim such that she may bring her claim in this Court.

90. Defendants are not entitled to benefit from their own misconduct. Equitable tolling of I.R.'s statute of limitation prevents this very result. Without the equitable tolling of I.R.'s statute of limitation Defendants would be rewarded for the very intimidation, retaliation, and constitutional violations that prevented Plaintiff from asserting her claim within the statutory period.

## **CLAIMS FOR RELIEF**

### **CLAIM ONE**

### **EIGHTH AMENDMENT, CRUEL AND UNUSUAL**

### **PUNISHMENT – SEXUAL ABUSE**

### **(Against AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive)**

91. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

92. Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive.

93. At all material times, AVALOS, KINLAW, and DOES 1-25, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

94. AVALOS and KINLAW violated Plaintiff's right to be free from cruel and unusual punishment by repeatedly sexually and physically abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

95. AVALOS and KINLAWs' sexual abuse of Plaintiff occurred under coercive circumstances.

96. By intentionally subjecting Plaintiff to sexual acts, AVALOS and KINLAW acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification. The inhumane conditions of confinement caused by AVALOS and KINLAWs' repeated sexual abuse caused Plaintiff severe physical, mental, and emotional harm.

97. GARCIA was the warden during the period that Plaintiff was being abused by AVALOS and KINLAW. As the warden, GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin. GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

98. GARCIA was also sexually abusing wards at FCI Dublin, and in his capacity as warden, thus ratified AVALOS and KINLAWs' behavior. GARCIA led PREA training and chaired the audit of FCI Dublin under the PREA. Thus, the man responsible for teaching inmates how to report rape was in fact a serial rapist of inmates.

99. AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

100. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

101. Plaintiff makes these allegations against DOES 1-25, inclusive.

## **CLAIM TWO**

### **GENDER VIOLENCE (Civ. Code § 52.4)**

### **(Against AVALOS, KINLAW, and DOES 1-25, inclusive)**

102. Plaintiff repeats and incorporates by reference every allegation

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

contained in any paragraph as if fully set forth herein.

103. Plaintiff brings this claim for gender violence under California Civil Code § 52.4 against AVALOS, KINLAW, and DOES 1-25.

104. Under California statute, any person subjected to gender violence may bring a civil action for damages against the responsible party. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

105. AVALOS and KINLAW discriminated against Plaintiff based on her female gender when he repeatedly sexually abused her, by subjecting her to sexual acts under the coercive conditions that were present between them.

106. AVALOS and KINLAWs' actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

107. By repeatedly subjecting Plaintiff to sexual acts, AVALOS and KINLAW caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

108. AVALOS and KINLAW acted with malice and oppression and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

109. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

110. These allegations are asserted against DOES 1-25, inclusive.

111. Plaintiff also seeks attorneys' fees and costs, as expressly authorized by

statute.

## CLAIM THREE

### SEXUAL BATTERY (FTCA, Civ. Code § 1708.5)

### (Against UNITED STATES, AVALOS, KINLAW, and DOES 1-25, inclusive)

112. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

113. Plaintiff brings this claim for sexual assault under FTCA and California Civil Code § 1708.5 against UNITED STATES and AVALOS and KINLAW. The UNITED STATES ratified the conduct of AVALOS and KINLAW.

114. AVALOS and KINLAW violated Plaintiff's statutory right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

115. AVALOS and KINLAWs' sexual abuse of Plaintiff occurred under coercive circumstances.

116. For these reasons, AVALOS and KINLAWs' sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

117. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, AVALOS and KINLAW must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

118. Plaintiff did not and could not consent to the touching.

119. By intentionally subjecting Plaintiff to sexual acts, AVALOS and KINLAW acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

120. AVALOS and KINLAWs' actions and judgment in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as

exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

121. By repeatedly subjecting Plaintiff to sexual acts, AVALOS and KINLAW, caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

122. AVALOS and KINLAW acted with malice and oppression, and her conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

123. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

124. All these allegations are asserted against DOES 1-25, inclusive.

### CLAIM FOUR

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, AVALOS, KINLAW, and DOES 1-25, inclusive)

125. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

126. Plaintiff brings this claim for intentional infliction of emotional distress under FTCA / California common law against UNITED STATES, AVALOS, and KINLAW. The UNITED STATES ratified the conduct of AVALOS and KINLAW.

127. AVALOS and KINLAW engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in his employer's custody. AVALOS and KINLAW abused her authority over Plaintiff and their power to affect her interests in a manner that was beyond all bounds of decency

and must be regarded as atrocious and utterly intolerable in a civilized society.

128. Plaintiff did not and could not consent to the touching by AVALOS and KINLAW.

129. AVALOS and KINLAWs' sexual and physical abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

130. AVALOS and KINLAW intended to cause Plaintiff this emotional distress because he knew that emotional distress was certain to result from her sexual manipulation and violent abuse of an inmate.

131. AVALOS and KINLAW's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

132. AVALOS and KINLAW acted with malice and oppression, entitling Plaintiff to punitive damages.

133. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (against individuals only).

134. These allegations are asserted against DOES 1-25, inclusive.

THE PRIDE
LAW FIRM

- 26 -

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

## CLAIM FIVE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### (FTCA, California common law)

### (Against UNITED STATES, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive)

135. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

136. Plaintiff brings this claim against the UNITED STATES, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, under the FTCA based on the actions and/or omissions of UNITED STATES, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, which were taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with United States' permission and consent.

137. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

138. **Duty**. United States, UNITED STATES, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, had a special, heightened, custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse. PREA regulations and BOP policy prohibiting sexual abuse confirm this special and heightened duty.

139. **Breach of duty—inadequate supervision**. The United States, UNITED STATES and DOES 1-25, inclusive, failed to supervise and operate FCI Dublin in a manner that would have prevented AVALOS, KINLAW, and GARCIA's ongoing sexual abuse of Plaintiff.

140. The United States and GARCIA did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations

regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

141. AVALOS and KINLAWs' sexual and physical abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the United States and DOES 1-25.

142. **Injuries and relief sought**. United States, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, actions and omissions caused Plaintiff to suffer, and continue to suffer, serious and severe emotional distress, including fear, depression, and anxiety, because of being repeatedly sexually abused.

143. Plaintiff's emotional reaction was not an abnormal response to her sexual abuse. A reasonable person would be unable to cope with the emotional distress caused by being sexually abused by a correctional officer, who had a duty to protect her from such abuse. Plaintiff's distress was of such a substantial and enduring quality that no reasonable person in a civilized society should be expected to endure it.

144. By reason of the United States, AVALOS, KINLAW, and GARCIA's negligent infliction of emotional distress, Plaintiff has suffered severe emotional distress and will continue to suffer severe mental and emotional anxiety and distress.

145. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

146. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SIX

**BATTERY (FTCA, California common law)**

**(Against UNITED STATES, AVALOS, KINLAW, and DOES 1-25, inclusive)**

147. Plaintiff repeats and incorporates by reference every allegation

contained in any paragraph as if fully set forth herein.

148. Plaintiff brings this claim for battery under FTCA and California common law against UNITED STATES, AVALOS and KINLAW. The UNITED STATES ratified the conduct of AVALOS and KINLAW.

149. AVALOS and KINLAW committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

150. AVALOS and KINLAW's sexual abuse of Plaintiff occurred under coercive circumstances.

151. For these reasons, AVALOS and KINLAW's sexual abuse of Plaintiff, an inmate in the custody of his employer, was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

152. Given the deeply offensive nature of these sexual acts and lack of any possible penological justification for these sexual acts, AVALOS and KINLAW must have subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

153. By intentionally subjecting Plaintiff to sexual acts, AVALOS and KINLAW acted maliciously in a manner that is deeply offensive to human dignity and void of any penological justification.

154. AVALOS and KINLAW's actions and judgments in sexually abusing Plaintiff were so far below the acceptable standard of custodial conduct, as exemplified by PREA regulations and BOP policy prohibiting sexual abuse and physical violence, that he could not have been making a policy judgment in his decision to sexually abuse Plaintiff.

155. By repeatedly subjecting Plaintiff to sexual acts and physical violence, AVALOS and KINLAW caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

156. AVALOS and KINLAW acted with malice and oppression, and his conduct constitutes a reckless or callous disregard of Plaintiff's rights, entitling her to punitive damages.

157. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages (only against individuals).

158. These allegations are asserted against DOES 1-25, inclusive.

## CLAIM SEVEN

## EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE – FAILURE TO PROTECT

### (Against AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive)

159. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

160. Plaintiff brings this claim against AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

161. At all material times, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

162. AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by AVALOS and KINLAW, by acting in conscious disregard of that known risk.

163. Despite having actual knowledge of abuse, GARCIA, as the warden, ratified AVALOS and KINLAWs' conduct by engaging in the same or similar acts as AVALOS and KINLAW with other inmates at FCI Dublin. Therefore, GARCIA,

AVALOS, and KINLAW purposefully denied Plaintiff protection from the known and substantial risk of serious harm of AVALOS and KINLAW's sexual abuse.

164. Prior to Plaintiff's sexual abuse, GARCIA and DOES 1-25 had knowledge of prior abuses occurring at FCI Dublin and did nothing to stop it, including failing to conduct an investigation, among other things. GARCIA and DOES 1-25 had a legal duty to investigate complaints of abuse. Despite knowledge of abuse, GARCIA and DOES 1-25 did not investigate any of the complaints. This failure caused and was a substantial factor in allowing abuses to continue to occur to inmates, including Plaintiff. GARCIA and DOES 1-25 consciously allowed inmates, including Plaintiff, to be abused.

165. Based on his position and behavior in the prison, GARCIA and DOES 1-25 knew or should have known that PERP was abusing Plaintiff.

166. GARCIA and DOES 1-25, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from AVALOS and KINLAW, in violation of 28 C.F.R. § 115.62.

167. AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable officer in the circumstances would have appreciated the obviously high degree of risk involved.

168. AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

169. AVALOS, KINLAW, GARCIA, and DOES 1-25 purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

170. AVALOS', KINLAW's, GARCIA's, and DOES 1-25's inclusive, deliberate indifference was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

171. Plaintiff seeks the following relief for her injuries: (a) nominal damages resulting from the repeated violations of her personal dignity and from physical injury; (b) non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity; and (c) punitive damages.

## CLAIM EIGHT

### NEGLIGENCE (FTCA, California common law)

**(Against the UNITED STATES, AVALOS, KINLAW, GARCIA, and DOES 1-25, inclusive)**

1. Plaintiff repeats and incorporates by reference every allegation contained in any paragraph as if fully set forth herein.

2. Plaintiff brings this claim against the UNITED STATES, GARCIA, AVALOS, KINLAW, and DOES 1-25 under the FTCA and California common law based on the actions and/or omissions of UNITED STATES, GARCIA, AVALOS, KINLAW, and DOES 1-25, inclusive, taken while working at FCI Dublin in their capacities as employees of the BOP and acting within the scope of their employment, with the permission and consent of the UNITED STATES.

3. At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the UNITED STATES in possession and control of FCI Dublin.

4. **Duty**. UNITED STATES, GARCIA, AVALOS, KINLAW, and DOES 1-25, inclusive, had a custodial duty, as well as a mandatory statutory obligation under PREA regulations and BOP policy, to protect inmates incarcerated by the United States from foreseeable harm, including, but not limited to, harm from sexual abuse.

5. The BOP's Personal Conduct rules for staff disallow any sexual activity

with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

6. Alternatively, UNITED STATES, GARCIA, AVALOS, KINLAW, and DOES 1-25, inclusive, had a general duty of care to Plaintiff. AVALOS and KINLAWs' sexual abuse of Plaintiff was reasonably foreseeable to the United States because AVALOS and KINLAWs' conduct made it obvious he was sexually and physically abusing Plaintiff.

7. **Breach of duty—inadequate supervision**. The UNITED STATES, GARCIA, and DOES 1-25 failed to supervise and operate FCI Dublin in a manner that would have prevented AVALOS and KINLAWs' ongoing sexual abuse of Plaintiff.

8. The UNITED STATES and GARCIA did not take reasonable, available measures to abate the risk of abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

9. AVALOS and KINLAWs' sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of the UNITED STATES, GARCIA, and DOES 1-25.

10. **Injuries and relief sought**. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

11. Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Nominal damages in an amount to be determined at trial;

2. Compensatory damages for injuries caused by a violation of her constitutional rights and personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

3. Punitive damages for malice, oppression, and reckless and callous disregard of Plaintiff's rights (except against United States);

4. An award to Plaintiff of reasonable costs; and

5. An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

6. Such other and further relief as the Court may deem fit and proper.

Respectfully Submitted,

Dated: September 22, 2025

**THE PRIDE LAW FIRM**

/s/ Jessica K. Pride
Jessica K. Pride
Email: jpride@pridelawfirm.com
Attorneys for Plaintiff

THE PRIDE
LAW FIRM

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL